IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal Action No. 06-106 |
| vs. | : | |
| JOSEPH BENTLEY | : | |

## DEFENDANT'S SENTENCING MEMORANDUM

Defendant Joseph Bentley, by his attorney, Thomas A. Dreyer, Esquire, hereby respectfully submits a Sentencing Memorandum setting forth all the factors that the Court should consider in determining what type and length of sentence is sufficient, but not greater than necessary, to comply with the statutory directives contained in 18 U.S.C. Section 3553(a).

Mr. Bentley is 22 years of age. He stipulated to pretrial detention. He accepted responsibility for his conduct. A term of imprisonment of 240 months is sufficient but not greater than necessary to comply with the provisions of Section 3553(a).

### Sentencing Under *Booker*

On January 12, 2005, the United States Supreme Court ruled that its Sixth Amendment holdings in Blakely v. Washington, 124 S.Ct. 2531 (2004), and Apprendi v. New Jersey, 530 U.S. 466 (2000), apply to the Federal Sentencing Guidelines ("FSG"). United States v. Booker, 125 S.Ct. 738, 756 (2005). Given the mandatory nature of the FSG, the Court found "no relevant distinction between the sentence imposed pursuant to the Washington statutes in Blakely and the sentences imposed pursuant to the" FSG in the cases before the Court. ID. at 751. Accordingly, it reaffirmed its holding in Apprendi and concluded that:

> [a]ny fact (other than a prior conviction) which is necessary to
> support a sentence exceeding the maximum authorized by the facts
> established by a plea of guilty or a jury verdict must be admitted by
> the defendant or proved to a jury beyond a reasonable doubt.

Id. At 756.

Based on this conclusion, the Supreme Court further found that the provisions of the federal Sentencing Reform Act of 1984 ("SRA") which make the FSG mandatory (18 U.S.C. Section 3553(b)(1)) and which rely upon the mandatory nature of the FSG (18 U.S.C. Section 3742(e)) are incompatible with its Sixth Amendment holding. Booker, 125 S.Ct. at 756. It thus excised those provisions, "mak[ing] the Guidelines effectively advisory." Id. At 757.

> As revised by Booker, the SRA now
>
> requires a sentencing court to consider Guideline ranges, see 18
> U.S.C.A. Section 3553(a)(4)(Supp.2004), but it permits the court to
> tailor the sentence in light of other statutory concerns as well, see
> Section 3553(a).

Booker, 125 S.Ct. at 757. Therefore, Booker permits sentencing courts to treat the FSG as just one of the several equally important factors outlined in 18 U.S.C. Section 3553(a). See United States v. Jackson, 408 F.3d 301, 304 (6th Cir. 2005) (the FSG range is only "one factor of several laid out in Section 3553(a)" which district courts are required to consider in arriving at a defendant's sentence).

According to the Third Circuit in United States v. Miller, 2005 U.S.App.LEXIS 15604 (3rd Cir. 2005), the net effect of Booker was to delete the mandatory nature of the FSG and transform them to advisory guidelines. See United States v. Roche, 415 F.3d 614, 619 (7th Cir. 2005) (by severing the provisions of the SRA which made the FSG mandatory, the United States Supreme Court in Booker "demoted the Guidelines from rules to advice").

The primary directive in Section 3553(a) is for sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." Section 3553(a)(2) lists these purposes as:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and,
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

This is known as the "Parsimony Provision".

Section 3553(a) further directs sentencing courts to consider the following factors in determining the sentence minimally sufficient to comply with the four Section 3553(a)(2) purposes:

> 1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> 2) the kinds of sentences available;
>
> 3) the kinds of sentence and the sentencing range established by the FSG;
>
> 4) any pertinent policy statement issued by the Sentencing Commission which is in effect on the date that the defendant is sentenced;
>
> 5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and,
>
> 6) the need to provide restitution to any victims of the offense.

18 U.S.C. Section 3553(a)(1) and (a)(3) through (a)(7).

Sentencing courts are given discretion by other statutory provisions as well.

Under 18 U.S.C. Section 3582(a), imposition of a term of incarceration is subject to the following limitation: in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the judge is required to 'recogniz[e] that imprisonment is *not* an appropriate means of promoting correction and rehabilitation". (Emphasis added.)

Under 18 U.S.C. Section 3661, "*No limitation* shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence". (Emphasis added.) A nearly identical provision specifically applies to defendants charged with drug offenses. See 21 U.S.C. Section 850.

This statutory language clearly overrides the now advisory policy statements contained in Part H of the FSG which list as "not ordinarily relevant" to sentencing numerous factors such as the defendant's age, educational and vocational skills, mental and emotional condition, drugs or alcohol dependence, and lack of guidance as a youth. *See* U.S.S.G. Section 5H1.

According to the directives of Booker and Section 3553(a), sentencing courts may no longer apply the FSG in an uncritical manner. Justice Scalia explains this point well in his dissent from Booker's remedial holding:

> Thus, logic compels the conclusion that the sentencing judge, after considering the recited factors (including the guidelines), has full discretion, as full as what he possessed before the Act was passed, to sentence anywhere within the statutory range. If the majority thought otherwise – if it thought the Guidelines not only had to be 'considered' (as the amputated statute requires) but had generally to be followed – its opinion would surely say so

.
Booker, 125 S.Ct. at 791 (Scalia, J., dissenting in part). Likewise, if the remedial majority

in Booker thought that the FSG had to be given "heavy weight", its opinion would have said so. The remedial majority clearly understood that giving any extra weight to the guideline range violates the Sixth Amendment.

The advisory guidelines range is one of the Section 3553(a) factors and continues to play an integral part in sentencing. United States v. Cooper, 437 F.3d 324, 331 (3rd Cir. 2006) (the FSG remain an essential tool in creating a fair and uniform sentencing regime across the country and provide a natural starting point for the determination of the appropriate level of punishment for criminal conduct).

In conclusion, sentencing courts must now consider <u>all</u> of the Section 3553(a) factors, and not just the FSG, in determining a sentence which is sufficient but not greater than necessary to meet the goals of sentencing.

**Application of the Statutory Sentencing Factors to the Instant Case**

The following factors must be considered in this case in determining what length of sentence is sufficient but not greater than necessary to satisfy the purposes of sentencing:

1. **The Nature and Circumstances of the Offense and the History and Characteristics of The Offender**

    **(A)  Nature and Circumstances of the Offense**

On April 28, 2006, Mr. Bentley sold 13 bags of heroin to the girlfriend of Seth Boyd. She kept six bags and gave the other seven bags to Mr. Boyd. He inhaled the heroin and died that day. The bags contained fentanyl in addition to heroin. The cause of death was respiratory depression due to inhalation of fentanyl.

On September 8, 2006, a Criminal Complaint was filed against Mr. Bentley. On September 14, 2006, the grand jury returned a six-count Indictment against him. On September

19, 2006, he was arraigned. He agreed to pretrial detention during that court proceeding.

On November 8, 2006, he pled guilty to Count Three of the Indictment charging him with Distribution of Heroin and Fentanyl Resulting in the Death of Another Person in violation of 21 U.S.C. Section 841(a)(1) and (b)(1)(C). He is facing a mandatory minimum term of imprisonment of 20 years. Pursuant to the parties' plea agreement, the Government will move for the dismissal of the other five counts of the Indictment on the date of Sentencing.

**(B)   History and Characteristics of Mr. Bentley**

Mr. Bentley is 22 years old. He is single and has no children (he and Jennifer Earls are expecting a son on April 28, 2007).

On May 5, 2006, Mr. Bentley was arrested by the local authorities. He spent one day in jail before bail was posted on his behalf.

On September 8, 2006, Mr. Bentley was arrested by the United States Marshals in the instant case and taken to the Salem County Correctional Facility ("SCCF"). He is still at SCCF.

While at SCCF, Mr. Bentley has taken the following steps to begin the process of rehabilitation:

1. He enrolled in classes to obtain his General Equivalency Diploma ("GED"). On December 20, 2006, he took the GED examination and passed Social Studies, Science, Language Arts and Reading. He did not think that he was sufficiently prepared to take Mathematics, the fifth and final portion of the examination. On January 22, 2007, he took Mathematics. He is awaiting the results of this examination.

2. He attends a one-and-one-half hour Bible Studies class every Wednesday.

     3.   He attends a one-and-one-half church service every Sunday.

     4.   He attended classes for Motivational Counseling.

     5.   He attended Maryville drug and alcohol counseling classes.

     6.   He accomplished a somewhat difficult task for a federal inmate by obtaining a job. He cleans hallways and jail cells on the In-House Work Detail.

Mr. Bentley dropped out of school during the 9th grade in 2001. As previously noted, he is now in the process of obtaining his GED.

Mr. Bentley worked for Drywall Associates out of Wilmington between 2002 and 2005. He framed housed and installed drywall.

Mr. Bentley subsequently left Drywall Associates in order to form his own business, JB General Contracting, which was licensed by the State of Delaware in February 2005. He was hired as a subcontractor by various contractors to assist them in the construction of new housing.

Mr. Bentley was born with Diabetes Insipidis. His body is unable to retain fluids and he must drink approximately 9 gallons of water each day as a result. He has never taken any medications for this condition.

**2. The Need for the Sentence Imposed to Promote Certain Statutory Objectives**

     **(A)  To reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense**

Under all the circumstances of this case, a sentence of 240 months reflects the seriousness of Mr. Bentley's offense, promotes respect for the law and provides just punishment in that it will keep him in prison for a significant period of time.

**(B) To afford adequate deterrence to criminal conduct**

Since September 8, 2006, Mr. Bentley has done everything possible to demonstrate to the Court that he will commit no other crimes. He agreed to pretrial detention. He accepted responsibility for his wrongdoing. He furthered his education. It is clear that he has been deterred from further criminal activity.

**(C) To protect the public from further crimes of the defendant**

As noted in the preceding paragraphs, Mr. Bentley has taken concrete steps to move his life in a positive direction. He has demonstrated that he will not commit any further crimes.

**(D) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner**

Mr. Bentley intends to pursue vocational training in the fields of construction and carpentry while in prison. In addition, because he abused so many drugs (cocaine, heroin, methamphetamine, ecstasy, oxycodone, morphine, percocet and methadone) for so many years, he requests that the Court recommend his admittance into the Residential Drug Abuse Treatment Program which is conducted by the United States Bureau of Prisons ("BOP").

**3. The Kinds of Sentences Available**

A sentence of imprisonment is available. 18 U.S.C. Section 3581. The imposition of a fine is available. 18 U.S.C. Section 3571.

**4. The Sentencing Range Established by the Sentencing Commission**

The FSG range of imprisonment for Mr. Bentley is calculated as follows:

1. A base offense level of 38 because he was convicted of 21 U.S.C. Section

841(a)(1) and (b)(1)(C) and the offense involved a death from the use of the heroin and fentanyl pursuant to U.S.S.G. Section 2D1.1(a)(2).

    2.   A two-level increase because he possessed a firearm pursuant to U.S.S.G. Section 2D1.1(b)(1).

    3.   A three-level reduction for his acceptance of responsibility pursuant to U.S.S.G. Section 3E1.1.

    4.   A total offense level of 37.

    5.   Criminal History Category I; one criminal history point.

(According to the PSR, Mr. Bentley has two criminal history points and is in Criminal History Category II.  He filed objections to these calculations.

Mr. Bentley concurs with Paragraph 35 of the PSR which assigns one point for his adult conviction for Shoplifting Under $1000 on May 3, 2006.  However, he disagrees with Paragraph 34 of the PSR which assigns another point for a juvenile case in which he was arrested on September 11, 2001 (he was 16) and given indefinite Level Two probation on October 30, 2000.  First, the Indictment specifies that he commenced the instant offense in December 2005.  According to U.S.S.G. Section 4A1.2(d)(2)(B), a person receives one point for an offense committed prior to age 18 if the juvenile sentence was imposed within 5 years of his commencement of the instant offense.  Here, Mr. Bentley commenced the instant offense in December 2005; this was more than 5 years after the juvenile disposition on October 30, 2000.

Second, Paragraph 34 concerns the offense of Criminal Trespass, Second Degree.  According to U.S.S.G. Section 4A1.2(c)(1), a sentence for trespassing, by whatever name it is known, is counted only if (A) the sentence was for a term of probation of at least one year or a

-9-

term of imprisonment of at least 30 days or (B) the prior offense is similar to an instant offense. Mr. Bentley received indefinite probation; there is no evidence that his probation was for a term of at least one year.  Moreover, there is no evidence that he was incarcerated for this offense. Finally, Criminal Trespass, Second Degree is not similar to Distribution of Heroin and Fentanyl Resulting in the Death of Another Person.)

      6.  A range of 210 to 262 months.

In Booker, the Supreme Court excised 18 U.S.C. Section 3553(b), the portion of the federal sentencing statute which made it mandatory for courts to sentence within a particular sentencing guideline range.  Booker, 125 S.Ct. at 756.  This renders the FSG advisory.  Id. The advisory guideline range for imprisonment is 210 to 262 months.  However, because the mandatory minimum sentence of 20 years, the effective guideline range is 240 to 262 months.

**5. Pertinent Policy Statement**

      There are no pertinent policy statements.

**6. The Need to Avoid Unwarranted Sentencing Disparities**

      There are no unwarranted sentencing disparities in this case.

**7. The Need to Provide Restitution to Any Victims of the Offense**

      Mr. Bentley has already agreed to pay restitution of $8,311.00 to Mr. Boyd's family in order to reimburse the family for his funeral and burial expenses.

**Proposed "Statement of Reasons Pursuant to 18 U.S.C. Section 3553(c)" for Sentence Below Guideline Range**

The sentence departs below the guideline range of the effective guideline range of 240 to 262 months for the following reasons:

1. Mr. Bentley is only 22 years old and is facing a mandatory minimum jail sentence of 20 years.

2. His first child will be born in just a few months.

3. He has a very minor criminal record.

4. He agreed to pretrial detention.

5. While at SCCF, he almost obtained his GED and he did obtain a job.

6. He accepted responsibility for his conduct.

**Conclusion**

The Court may vary from the advisory guideline range of imprisonment of 210 to 262 months based upon the factors set forth in 18 U.S.C. Section 3553(a) as long as the variance is reasonable. United States v. Shannon, 414 F.3d 921, 923 (8th Cir. 2005). Mr. Bentley respectfully submits that, under all the circumstances of this case, a sentence of 240 months is reasonable; that it is sufficient, but not greater than necessary, to comply with these statutory directives; and that it is therefore in conformity with the Parsimony Provision.

Mr. Bentley hereby requests a statutory sentence of 240 months. In addition, he requests that the Court:

1. Recommend to the BOP that he receive treatment in its Residential Drug Abuse Treatment Program.

2. Recommend to the BOP that he serve his sentence at a facility as close as possible to Wilmington, Delaware.

3. Recommend to the BOP that he receive credit towards his sentence for the one day of incarceration in May 2006 following his arrest by the local authorities and for the period of incarceration from September 8, 2006 following his arrest by the United States Marshals to the present date.

                                          **td347370**
                                          Thomas A. Dreyer, Esquire
                                          6 Dickinson Drive
                                          Building 100 – Suite 106
                                          Chadds Ford, PA  19317
                                          610-358-4454
                                          Attorney for Defendant Joseph Bentley

Dated:  February 2, 2007

## CERTIFICATE OF SERVICE

Thomas A. Dreyer, Esquire hereby certifies that he served true and correct copies of the foregoing Defendant Joseph Bentley's Sentencing Memorandum upon the persons listed below on the date listed below by first class mail, postage prepaid:

Honorable Gregory M. Sleet
United States District Judge
J. Caleb Boggs Federal Building
844 King Street
Wilmington, DE  19801

Colm F. Connolly
United States Attorney
1007 Orange Street – Suite 700
P.O. Box 2046
Wilmington, DE  19899-2046

Jean Lubinsky
U.S. Probation Officer
844 King Street
Lockbox 39
Wilmington, DE  19801-3588

**td347370**
Thomas A. Dreyer, Esquire

Dated:   February 2, 2007